Judge Marshall
delivered the Opinion of the Court.
Presuming—as in comity we feel bound to do—that the County Court of Monroe county, in the State of Virginia, acted within the pale of its authority in appointing a guardian for-the infant legatee, Samuel B. Keenan, although his father was living, we do not think the payment made to the guardian for the infant, can be disregarded. But as an executor is prohibited, by well established principles, from trading and making profit, for himself, out of the estate committed to his charge, or out of the rights of those who are interested in it, we are of opinion, that the transaction between the executor and the guardian, should not have effect as a purchase of the infant’s legacy by the executor, but merely as a payment of so much before the legacy became due, and which entitles the executor to a credit for the sum paid, with interest. The Chancellor cannot but look with jealousy upon any trafficking with an infant’s interest, between the executor and guardian. It is, at least, extremely doubtful whether the guardian had any right to sell the infant’s legacy before it was due, and when the time at which it would be payable was uncertain, and its value for this and other reasons incapable of exact estimate. It is certain that the executor has no right to make personal profit by such a traffick. The transaction in this case, if regarded as a sale of the legacy, is the more obnoxious to jealousy and suspicion, because all of the circumstances on which any probable estimate of its value could be made, were more within the knowledge of the executor than of the guardian, or other friend of the infant, who resided in another State, and who must have been, to a great extent, dependent *571 upon the information derived from the executor, for any precise knowledge on the subject.
A legatee, by his agent, demanded his legacy; the ex’ors resisted, upon the ground that one of them had bought the legatee's interest, by a contract with his guardian; but the executors, and the agent, agreed on a compromise— in effect, that the ex’ors should bring suit upon a refunding bond which they had taken upon paying a co-legatee whose right was doubtful, and, if successful, should pay half the sum recovered to the legatee, in full satisfaction of his claim; if defeated, the ex’ors to pay the costs, and the legatee to relinquish his claim: Held , that such an agreement—obtained by the denial of a just debt—is not to be favored in equity; and as it is, by its terms, but an accord without satisfaction, the executors, to entitle them to use it.as a bar to the legatee’s claim, must show—either, that having recovered in the proposed suit, they have paid over half the proceeds as agreed, or that, having prosecuted, the suit in good faith and with diligence, they had failed in it, without fault on their part; and nothing of all this appearing, though the agreement was made five years before the legatee brought his suit, and ten years before the hearing, he is entitled to a decree for his legacy, deducting (upon the principle above) the sum, with, its interest, paid by the executor in his purchase made of the guardian.
Under these circumstances, and as it turned out that the legacy, when payable, greatly exceeded the sum paid to the guardian; with interest to that time, it would, in our opinion, be inconsistent with the principles established for insuring the fidelity of trustees, and guarding the interests committed to them, to permit the executor to hold the profits of this speculation. When the legacy became payable, he was entitled to a credit for the sum paid to the guardian, with interest, and was bound to pay the residue to the legatee.
Such being the rights of the parties when the legacy became payable, it remains to consider what effect should be given to the alleged compromise, made some years afterwards, between the executor and an agent of the legatee, through whom the legacy was demanded. This agreement, which was merely verbal, was, in substance, that, upon an alleged doubt whether one of the persons to whom the executors had made payment as a co-legatee with Keenan, was in fact a legatee, and entitled to any thing, the executors should prosecute a suit upon the refunding bond executed to them; on making said payment, to recover the amount paid; with interest; that, if any thing should be recovered, one half thereof should be paid to Keenan, in discharge of his demand; and if nothing should be recovered, they should bear the costs, and should be forever released and discharged from all liability to Keenan.
It is manifest, from the pleadings and testimony, that, before this agreement was entered into, the executor, Smith, with whom alone it was made, and who alone had been concerned actively in the previous transaction *572 relative to this legacy, did not acknowledge any obligation to pay the legacy, or any part of it, to Keenan, but insisted that he had made a valid purchase of it, and that Keenan’s right, as against the estate, was extinguished. And it may be assumed that this agreement to abide the issue of a doubtful suit, was resorted to, not as the means of satisfying an acknowledged demand, but in consequence of the refusal of the executor to pay, and his denial that any thing was due. An agreement thus obtained, by the denial of a just debt,is not entitled to any peculiar favor in a Court of Equity, and especially when it is set up by a trustee against his cestui que trust. And if it were conceded that the mere fact of making such an agreement, was of itself a bar to any proceeding by the legatee to recover the legacy itself, the effect would seem to be, in this case, rather to authorize an evasion of the debt, than to secure a particular mode of satisfying it.
But this cannot be admitted. The agreement itself does not import that the undertaking of the executors is taken in satisfaction or in lieu of the legacy, but that the issues of the suit, whether favorable or unfavorable, are to be received in discharge of it. It is but an accord, by which the performance of a collateral thing to be done by the debtor, is agreed to be received by the creditor in satisfaction. In setting it up in equity as a bar to the complainant’s suit for his legacy, the executors in effect demand a specific execution of it from him. And this they have no right to claim, unless they show, either an actual performance on their part, or at least an honest and diligent effort to do what they had undertaken; and that the thing to be done is either proceeding in good faith and with due diligence, or, if it has been terminated unsuccessfully, that it was without their fault. The executors have wholly failed to do this in the present suit. When it commenced, nearly five years had elapsed from the date of the agreement, and five years more had passed when the final decree was pronounced. Yet it is not shown, in this case, that the action upon the refunding bond, prosecuted by the executors, had terminated, nor why it had not, nor that it *573 was prosecuted with fidelity and diligence. From the long time which had elapsed, and from the narrowness of the issue involved, and from the failure of the executors to show what had been done in the case, or what obstacles prevented its progress, the presumption is, that it was not faithfully and diligently prosecuted. After this failure on their part, they have no right to insist that the legatee shall await still further the progress or issue of that action, and then take an unfaithful prosecution of it on their part, as full payment of his just demand. It is possible, as seems to have been the opinion of the executor, that the most diligent prosecution of the action would have resulted in nothing. But if this were so, and if it were conceded that they could in such a case have compelled the legatee to rest satisfied with nothing but their diligent prosecution of the suit; it by no means follows, and cannot be conceded, that he is bound to be satisfied with nothing, upon any other terms than a diligent prosecution of the suit.
We are of opinion, therefore, that Keenan was entitled to a decree for so much of his legacy, with interest from the time it was payable, as remained after deducting from the whole legacy the sum of two hundred dollars, paid to his guardian in Virginia, with interest thereon from the time of its payment up to the time when the legacy was payable. As, in the decree actually rendered, no credit was allowed for the payment made to the guardian in Virginia, the decree is in that respect erroneous to the prejudice of the executors.
The decree is, therefore, reversed, and the cause remanded, with directions to render a decree in conformity with this opinion.